BOARD OF CHOSEN FREEHOLDERS OF ESSEX COUNTY AND ESSEX COUNTY IMPROVEMENT AUTHORITY, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY, PLAINTIFF, v. DANIEL O'HERN, COMMR. OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION, NEW JERSEY SOLID WASTE ADMINISTRATION, CITY OF NEWARK, A MUNICIPAL CORPORATION, AND COMBUSTION EQUIPMENT ASSOCIATES, INC., A NEW YORK CORPORATION, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided June 9, 1978.

*Mr. Michael Perle,* attorney for plaintiffs.

*Mr. Nathan M. Edelstein,* Deputy Attorney General, for defendants Daniel O'Hern and New Jersey Solid Waste Administration (*Mr. John J. Degnan,* Attorney General, attorney).

*Mr. Kevin J. Coakley* (*Messrs. McElroy, Connell, Foley & Geiser,* attorneys), and *Mr. Joseph F. Kelly, Jr.* (*Messrs. Townley and Updike,* attorneys), for defendant Combustion Equipment Associates.

*Mr. William J. Schwartz,* Assistant Corporation Counsel, for defendant City of Newark (*Mr. Salvatore Perillo,* Corporation Counsel, attorney).

MARZULLI, J. S. C. This case arises by way of a complaint in lieu of prerogative writs. All defendants have joined in a motion for dismissal of plaintiff's complaint, asserting that this court lacks jurisdiction to hear an appeal from the decision of a state agency. Briefly stated, the contentions are as follows:

The County of Essex, through its board of freeholders and the Essex County Improvement Authority (hereinafter, plaintiffs), have asked this court to enjoin the Department

of Environmental Protection and the Commissioner thereof (hereinafter, Department) from conducting further hearings and granting a registration to defendant Combustion Equipment Associates (C. E. A.) to construct and operate a solid waste disposal facility under a contract dated June 1, 1977 between C. E. A. and defendant City of Newark (City).

Plaintiffs contend that under the provisions of the Solid Waste Management Act, L. 1975, c. 326, codified as N. J. S. A. 13:1E–1 et seq. (hereinafter, the act), they have exclusive jurisdiction for the planning of solid waste disposal in their district for a period of 360 days. Plaintiffs further contend that if a registration is issued to C. E. A., the capacity of the proposed C. E. A. plant would be sufficient to accommodate all of the solid waste in the district and would in effect usurp the jurisdiction of plaintiff as set forth in the act.

Defendant Department contends that the act does not deprive it of power to act in this field and that its jurisdiction is concurrent with that given to the county.

Defendants city and C. E. A. claim that their contract was "in force" on the effective date of the act and therefore it is exempt from the provisions of the act.

For reasons hereinafter stated, defendants' motions to dismiss the complaint are denied.

Plaintiffs seek a declaration of the powers granted to them under the act, as opposed to the powers granted to the Department. They are not appealing a determination of the Department. In effect, this court has been asked by plaintiff to determine the intent of the Legislature.

There being no case law, it is necessary to interpret the language of the act as it is clarified by its legislative history.

The major thrust of the act is to regionalize the solid waste collection and disposal functions by designating each county and the Hackensack Meadowlands Development Commission as "solid waste management districts" with responsibility for formulating a comprehensive waste manage-

ment plan for the municipalities within their district. *N. J. S. A.* 13:1E–2(b) (2). The act further provides that plaintiff district shall have a period of 360 days from the effective date of the act to formulate and submit such a comprehensive plan. *N. J. S. A.* 13:1E–20(a) (1).

The authority delegated to the defendant Department includes the powers:

*\* \* \* to develop and implement such a plan where none is approved or forthcoming from any solid waste management district,* to arbitrate disputes between solid waste management districts in the development and implementation of solid waste management plans, to utilize the funds received by the department from registration fees . . . to support and undertake experimental projects and programs of research and development . . . to grant funds to the districts for the formulation and development of solid waste management plans . . . *N. J. S. A.* 13:1E–2(b)(6). [Emphasis supplied]

It is the 360-day period of limitation on district planning which lies at the nub of this controversy. Plaintiff alleges that the 360 days were designed to give it a period of total planning autonomy, free from interference by any other public or private entity. The various defendants, on the other hand, are unanimous in their insistence that the 360-day limitation was designed merely to encourage a speedy resolution of an acknowledged public dilemma.

Both are essentially correct. As plaintiff insists, the Legislature has elected to structure solid waste management at the county level. Prior to passage of the act the bill's sponsor, Senator Feldman, enunciated the collective intention of the County and Municipal Government Study Commission which had made in-depth findings of fact: "We feel that county government is the proper framework for managing solid waste in New Jersey." *Public Hearing on Senate Bill No. 624 (Solid Waste Management).*

Further supporting the primacy claim of the counties is the legislative expression of discontent with the prior system of waste management, governed predominantly by individual municipalities with state supervision:

\* \* \* that the management of solid waste in New Jersey consists of largely piecemeal, uncoordinated activities developed to meet the needs of local governments with little, if any, regard for regional planning and coordination. [*N. J. S. A.* 13:1E–2(a)]

On the other hand, this court is compelled to agree with the arguments of defense counsel, to the extent that they perceive this act as a response to a crisis situation, in which the Legislature was desirous of effecting a speedy resolution. The statutory provision just cited in support of the county's exclusive jurisdiction also states that

\* \* \* for the most part, the solid waste planning and management function is adversely affected by the absence of area-wide structures, the limitations of local initiative, the general inadequacy of State technical assistance, the paucity of State grants for solid waste experimentation, the failure of the State to establish guidelines for the preparation of county and intercounty plans, and the failure to implement county and intercounty solid waste collection, disposal and utilization operations. [*N. J. S. A.* 13:1E–2(a)]

Certainly, the picture painted by the Legislature · was designed to portray a chaotic and ineffectual program which required immediate attention. It is apparent that the Legislature did, indeed, intend the 360-day period as a means of prodding the newly empowered counties to expeditiously resolve a crisis situation.

Having agreed with the basic premises of counsel for both sides, it becomes the task of this court to accommodate both theories into a framework which will permit the resolution of the case at bar.

Restating the accepted premise that a crisis situation has existed in the State with regard to the management of solid waste, it becomes imperative to question the wisdom of a legislative enactment which would effectively prevent any ameliorating action from being taken by the State during the 360-day period. The act, passed on February 26, 1976, was not to become effective until funded. The act became effective on July 29, 1977. Adding the 360-day period to the latter date, we arrive at July 24, 1978 as the deadline

for filing of the Essex County plan, barring any extension of up to 45 days under the authority of *N. J. S. A.* 13:1E–20 (a) (1). Therefore, the maximum period of time from the enactment of the amendatory legislation to the last day for submission of a county plan is 880 days. Even accepting, for the moment, the unlikely situation where the county would be ready to propose a plan on the first day of the 360-day period, there still remained 510 days during which the power to plan for solid waste collection and disposal would be situated in limbo. I do not believe that the Legislature in any way intended to allow an already bad situation to deteriorate further.

Earlier reference to *N. J. S. A.* 13:1E–2(b) (6), in which the duties of the Department are enunciated, demonstrates without ambiguity that the role of the Department is primarily supervisory in nature. That role does not include the authority to develop or implement a waste management plan, unless a district fails to do so within the allotted time.

It does not follow, however, that the Department is deprived of all authority to act in the absence of a district plan. Although the act's amendatory features were denied effectiveness pending the enactment of funding legislation, it specifically provided that any "contracting unit" might continue to contract for the collection and disposal of solid waste from the date of act's passage. *N. J. S. A.* 40A:11–15.

Defendant City of Newark qualifies as such a "contracting unit."

With regard to the relationship between the Newark-C. E. A. contract and the "pending" district plan of plaintiffs, the act makes clear that such a contract may *temporarily* be the basis for a waste collection and disposal operation, under certain conditions:

In the event that no solid waste management plan has been approved for a solid waste management district, no contract renewal or new contract for solid waste collection or solid waste disposal shall be entered into for a period in excess of one year from the date of such contract renewal or new contract in such solid waste manage-

ment district unless such a contract contains a provision for its renegotiation to bring it into conformance with an approved solid waste management plan for that solid waste management district upon the approval of said plan or unless such contract is approved by the commissioner. [*N. J. S. A.* 13:1E–29(b)]

This court must make reference to a number of provisions within the act which limit and define the department's power to issue registrations under the aforementioned circumstances, or which provide boundaries within which waste related contracts must abide.

Most obvious is the language of *N. J. S. A.* 40A:11–15(3), which limits contracts for the collection and disposal of garbage to a maximum period of five years. Also relevant to the department's power to register new facilities is *N. J. S. A.* 13:1E–29(b). This provision is also designed to protect the interests of solid waste management districts by insuring that pending district plans cannot be permanently made needless by facilities erected during the 360 days and prior to approval of such district plan. The act accomplishes this result by limiting the life of any new contract approved during this period to one year, unless the contract provides for renegotiation to fit it within a later approved district plan. A third alternative is that the contract may exceed one year if approved by the Commissioner. Such approval, however, would obviously be conditioned upon a review of the terms proposed and a consideration of the effect such plan would have on any pending district plans.

This court will not pass judgment upon the validity of the C. E. A.-Newark contract or the effect the proposed plans would have upon the viability of any proposed plan of the plaintiff Essex County Improvement Authority. The Department is presumed by this court to be cognizant of the statutory limitations imposed upon its ability to register new facilities and I must presume just as strongly that the Department will fulfill its obligations accordingly.

This court rejects the argument of plaintiff that the refusal to enjoin the Department from issuing a registration

to C. E. A. would present the county with a *fait accompli.* Quite the contrary, the act is replete with limitations on the Department's power to approve new collection and disposal facilities, *N. J. S. A.* 13:1E–29(b), *N. J. S. A.* 40A:11–15(3), *N. J. S. A.* 13:1E–4(b), and any action in excess of this strictly circumscribed power would certainly entitle plaintiff to proceed with an immediate appeal to an appropriate appellate tribunal from the Department's action or decision.

With regard to the argument of defendants C. E. A. and the City of Newark that the "contract in force" language of *N. J. S. A.* 13:1E–29(b) would, of itself, permit the Department to approve the contract between such defendants, such argument is wholly rejected. The relevant portion of that provision reads as follows:

b. Nothing herein contained shall be construed as to interfere with, or in any way modify, the provisions of any contract for solid waste collection or solid waste disposal in force in any solid waste management district upon the effective date of this act. * * *

■■ This court rejects the contention that the Legislature used the words "in force" with the intention that they convey the meaning attributed to them as words of art in the law of contracts. Rather, I regard these words as intending to convey the Legislature's desire to protect prior *operating* collection or disposal facilities within a district that submits a plan. To accord with the interpretation of the defendants would be to assume that the Legislature intended to allow any municipality and private waste related entity to contract for services prior to the passage of funding legislation, and to thereby become superior to a district plan submitted in accordance with the act.

Such a result is contrary to the expressed purpose of the legislation and must be rejected.

■ The decision of this court is that plaintiffs, for the 360-day period provided in the act, have exclusive jurisdiction for the planning of solid waste disposal in their

district. During the planning stage, however, the Department has the authority, as limited by the act, to register waste disposal facilities to temporarily meet the needs of the district.

The application of plaintiff to enjoin the Department is denied.

WILLIAM & BARBARA CALDWELL: EDNA MILLER: VINCENT & MARY K. FARRARO: MANNY & KATHERINE CID: EDWARD & DOMENICA SANTORA: MARGARET STEPHENSON: JOHN & CLAUDIA LEONE: ROBERT & JUNE JAROCHE: SERGE & JULIA CASIMER: ROBERT & CAROL COGAN: VINCENT & ELLEN BASILE: ELEANOR VON EIGEN: BEATRICE CONROY: WILLARD & LUCILLE BORDEN: WALTER & KATHLEEN HARTMAN: FRANK & ANNA MC GRATH: JOSEPH & JEAN GAWLICK: FRANK R. & MADELINE MC GRATH: GEORGE CHRISTOPHER: THOMAS LOWE: DAVID BRONBERG: NATHAN & THERESA LEWIS: RICHARD & MARY JANE BERGGREN: T. A. DAUM: OLGA NALEWICK: DOROTHY STILLWELL: WILLIAM & ELEANOR KNAPP: DANIEL & VIOLA MARINO: PLAINTIFFS, v. GEORGE LAMBROU, DOROTHY R. KATZ, DOROTHY FREEMAN, BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MAPLEWOOD, PAUL WILKS, BUILDING INSPECTOR OF THE TOWNSHIP OF MAPLEWOOD, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided June 23, 1978.